Please call the first case. 113-0361, Hedin, Gaynor v. Interpol. Counsel. May it please the Court. Counsel, Robert Smaller, on behalf of the appellant, Kadeem Graham. Mr. Graham brings this appeal pursuant to the denial of his claim by the Illinois Workers' Compensation Commission in a two-to-one decision. Mr. Graham was working for his employer. He was on his lunch break. He had already partaken of his lunch. And he participated in a pickup game of basketball incidental to his lunch hour. He had a few remaining minutes left. He was not participating in a program or an event that was an organized event. That's the key here. Because obviously you were Section 11, which ostensibly precludes compensation for injuries sustained in recreational activities unless it's directed or assigned by the employer. And you're not saying that the employer had anything to do with directing or assigning him to play basketball, right? That's exactly right. We're not saying that the issue has to do with them mandating or ordering him to do this. This is a voluntary activity. You can see this was a voluntary recreational program within the meaning of Section 11. Voluntary recreational activity, not within the meaning of Section 11. Would you consider this personal comfort, doctor? Exactly. Well, if that were the case, Section 11 would be totally meaningless. Because every voluntary recreational activity would fall within the personal comfort doctrine, wouldn't it? Walking is a recreational activity. So when someone gets injured walking, the employer would be able to deny that claim under Section 11. I don't believe that that's the intent of Section 11. I don't think walking is what they're talking about in Section 11. I think they're talking about baseball, basketball, football, volleyball, and the like. But that wasn't my question. My question is if we adopted your theory that it fell into the personal comfort doctrine, Section 11 would be absolutely meaningless. Because every time an employee played baseball, basketball, football, frisbee, whatever it is, they'd argue personal comfort, and therefore would cover it. Section 11 would be meaningless. Not every time. When it's a program or an event, then Section 11 would apply. I don't understand what you mean when it's a program or event. So in other words, if it's a pickup game, Section 11 doesn't apply. But if the employer has a program for playing basketball, it does apply. Exactly. That doesn't make any sense. It doesn't. Because then the employer would have to do whatever they want, and then the employer is responsible. If the employer has nothing to do with this and is voluntary recreational, why would the employer be responsible? The employer is not responsible if it's a program or event, a picnic. I mean, the plain reading of Section 11 is the words that they use are voluntary recreational programs, including but not limited to athletic events, parties, and picnics. They're not talking about an activity where the person is refreshing themselves incidental to a lunch hour on the premises, which is what happened here. You're saying, obviously, that the personal comfort doctrine would have to trump the plain language of Section 11, right? That's exactly our argument when we're relying on Commissioner Turrell, who... Let me ask him a question. Let's make this real simple. Forget about Section 11. How did this arise out of his employment? It arose out of his employment because when he was taking a jump shot, he went up... No, no, no. What did that have to do with his employment? It's incidental to his employment. Why is it incidental to his employment? He's having his lunch hour. He didn't have to be there. He could leave the premises if he wanted to. He was not required to play basketball. He was playing. Why does it arise out of his employment? The same way that taking lunch, going to the washroom, someone lying on a rooftop, refreshing themselves during the lunch hour from a hot, steamy place of employment, those have been found compensable under personal comfort doctrine. It's the same thing. Let me put a final point on it. Obviously, if your argument is the personal comfort doctrine trumps Section 11 of the statute, what authority can you direct us to that says that? The Illinois Supreme Court. In which case is that? Eagle Discount Supermarket. And when was that decided? In 1980. Was that before the amendment to Section 11? Yes, but the amendment only had to do with the voluntary aspect of Section 11. It didn't change the requirement under Section 11 regarding voluntary recreational programs, athletic events. It only added the part about that it's excluded. It doesn't apply where the employee is assigned or ordered. So that shouldn't affect the Supreme Court's decision. Plus, that Eagle Discount Supermarket case has been cited by the Supreme Court since that decision and has been cited by the appellate court in Orsini. That case has not been overturned. That is still good law. I've never seen any cite by the employer to show us that Eagle Discount is no longer applicable law. So how do you read Section 11 then? What's the point of Section 11? If the personal comfort doctrine trumps that, what's the point of Section 11? The purpose of Section 11 is to relieve the employer of an obligation to be responsible for injuries that occur in picnics, intramural basketball games, bowling, for instance. The employer cited to the Viacom case, which, by the way, was a Rule 23 decision they cited to. But in Viacom, it's a bowling incident that happened outside of the employer's place of business. It was clearly an event, an organized event to raise money. And that case cited to COSAC. And COSAC, another, it was a tennis tournament. This is not what happened here. So the employer, I understand that, and there's some sensible language to that effect. But the alternative is then whenever somebody takes a break on a job, no matter what their activity is, if they get hurt, the employer is going to be responsible, correct? That's correct, because that's the personal comfort doctrine. That's what it talks about. Well, then you want every employer then to take down every basketball court. If I'm the employer and we go along with your decision, you're not going to have any amenities. You realize that, don't you? Why would an employer ever allow someone to play volleyball or basketball under your theory? Because they gain a benefit from refreshing the employees. It's the same reason. If they get injured, they're going to be on the hook, correct? Every sprained ankle, every pulled muscle, right? The person could get injured going to the washroom, too. They could get injured trying to get food out of a vending machine. There's different ways that they could get injured. We can't protect the employer from every accident. I think you're more likely to get hurt playing volleyball or basketball than you are getting food out of a vending machine, but I'll leave you to your interpretation of the impact. If every recreational activity comes under Section 11, walking is a recreational activity. Why can't an employer use Section 11 to deny any accident where the person was walking and slipped and fell? Many times when you walk, you're not doing it for recreational purposes. You're doing it for locomotion. Do you play basketball for locomotion? Correct, but it can be argued by an employer that it's a recreational activity to take it to its fullest extreme. So there has to be a line. Counsel, get off that one. That doesn't make any sense at all. Let's go back to Justice Hoffman's earlier question. Personal comfort doctrine only goes to the in course of. So how did this arise out of? This arose out of the employment because, incidental to his lunch hour, he was playing basketball, he did a jump shot, and as we all know just the mere act of doing a jump shot can be dangerous. We've seen the Louisville game two years ago in the NCAA. The gentleman had a severe fracture of his leg just by going up, just jumping. He wasn't even doing a jump shot. Here, he came down, his right leg hit the ground. The question is how does it arise out of his employment? We know how it happened. How did it arise out of his employment? Because of the defect on the floor, the water caused him to slip. That arose out of his employment? The playing of basketball arose out of his employment? How did playing basketball arise out of his employment? That's real easy to answer. What's the connection? What's the connection? The connection is the slipping when he came down. Not that the basketball is incidental. Come on. We know the mechanics of his injury. How does playing basketball on your lunch hour arise out of your employment? Not how did he fall down. We know how he fell down. The personal comfort doctrine. Personal comfort doctrine applies in the course of. Correct. Not arising out of. You have to have both. How did it arise out of his employment? It arose out of his employment because he slipped. You and I are not communicating. I know how he fell. He slipped. What did the playing of basketball have to do with his employment? Exclusive of the personal comfort doctrine. The arising out of portion of the tuberonic test is satisfied because he slipped on a defective floor. But how is it a risk connected with the employment? Because he was on the premises refreshing himself during his lunch hour. Well, you want to talk about the water. Didn't the employer's agent deny that there was ever water on the court? There were some issues on that. Did the commission find, in fact, there was water? Did they make that finding? No. Okay. So then where's the risk then connected to the employment? Yeah. That was a question I was trying to lead up to. Even if we brought your whole argument that, okay, personal comfort doctrine put him in the course of, the water was a qualitative risk that exceeded the risk of the general public, the commission made a factual finding that the water wasn't there and had testimony both ways. So even if we followed your entire theory, why would that be against the manifest way of the evidence? The mere act of jumping up created a dangerous situation. So coming down, as I cited to the- So you're not really relying on the water then to create the risk for rising out of? I don't think there has to be water. I think that was a distraction, a strong point that the employer brought up. But I don't think that that was the issue. That was sort of a red herring issue, distracting the fact that playing basketball inherently can be dangerous. You can get injured. Let's say this had been a situation where someone had been ordered or mandated to participate in this basketball game. You can go up for a jump shot, come down and twist your knee. I mean, that then would arise out of the employment under the court's thinking here. So you don't need the water on the floor to get injured during a basketball game. The Supreme Court's case, as I stated, in Ego, has never been overturned. This court has cited to it, in fact, in previous decisions. The Supreme Court cited to it in Orsini in 1987. That was a July 3, 1981 accident, which was a year after Section 11 was amended on September 15 of 1980. Again, it was cited by this court in Caris De Matis, which was a 1999 decision. And Ego states that the personal comfort doctrine applies exactly to these facts. In Ego, the employee was playing Frisbee. It was on company premises during the lunch hour. The facts are absolutely aligned with our claim. And so, again, what was the ostensible purpose in the legislature amending Section 11? Why did they amend it after those cases? They amended it to clarify or to make part of the statute that if the employee is ordered or mandated to participate in this event or program and they get hurt, then it is a job accident and they're responsible for it. And that's the kind of – that's what – But why would they have needed that under the theory of Ego? I'm sorry? You wouldn't have needed that amendment if Ego applied. And second of all, the event that took place in Ego took place before Section 11 was adopted. So Section 11 had nothing to do with Ego, or Ego had nothing to do with Section 11. Section 11 came into effect after the events that gave rise to Ego. The amendment to Section 11. Yeah, excluding liability for engaging in these programs. Correct. Yes. The employer is responsible if the employee gets injured during a mandated athletic activity. We understand that. But if you read Section 11, what's exempted from Section 11, it would be more likely to hold an employer liable for doing the things that were exempted from Section 11 than it would be in the events that you're talking about. The Ego case is clear that the personal comfort doctrine applies. The personal comfort doctrine still exists. The personal comfort doctrine does not trump Section 11. Correct. It does not trump Section 11, period. There is no case that says so. And there's no case that says the personal comfort doctrine doesn't apply. I think this one will. But that will be after a full discussion, a full and fair discussion. Here's my question. You're saying that, yes, it's amended to say that where the employer mandates activities, okay, and then the employer gets injured, the employee gets injured. It's not simply because they're trying to comply with the employer's directives. Okay, that makes sense. Then the employer is on the hook. But now you're saying that even where they don't mandate or assign it, they're going to be on the hook either way, correct? According to the personal comfort doctrine, it requires the employer to be liable for voluntary recreational activities they have the employer's no knowledge of, and they're also liable if they assign them. Correct? So what's the point, again, of Section 11 if the employer is going to be responsible under any theory according to you, right? The point of Section 11 is clear. In Section 11, they never use the word activity. This Court has used the word activity in interpreting Section 11, but Section 11 doesn't have the word activity. It has program and events. And as Commissioner Turrell stated in his opinion, clearly this was not a voluntary recreational program. It was neither league play nor intramural. It was not a program at all. Rather, it was an employee taking advantage of the remaining minutes of his lunch period, enjoying his time playing the pickup game with his co-employees. This fact pattern fits directly in line with what Professor Larson envisioned and what the courts have adopted under the personal comfort doctrine. There's a difference between a picnic and a bowling event to raise money for a charity and a tennis tournament where you're trying to produce a tennis team around Robin. Those are completely different than the employees on their lunch hour refreshing themselves. But according to you, whatever physical activity takes place on the employer's premises over the lunch hour, whether the employer is aware of it or directs it or controls it, the employer is still going to be liable for any injury, correct? Well, I didn't say everything. I don't know what fact pattern you're thinking of. Physical activity. Well, you know, volleyball, basketball, horseshoes, anything, right? Yes. Okay. That's our argument, that the employer here is responsible for this particular fact pattern. I'm not sure what other facts you're thinking of. But under this circumstance, where it's provided part of his lunch hour, the employer should be responsible. And Section 11 is clear that it doesn't apply to all recreational activity. What if this basketball game took place off of the employer's premises? Would that still be the personal comfort? What if he played basketball at the park on his lunch hour? Because this man testified he didn't have to stay on the employer's premises for lunch. We wouldn't be making the same argument. Why not? Personal comfort, isn't it? What's the difference where? Why would it make a difference where it happens? Because the Supreme Court in Eagle said it does make a difference. Eagle was adopted before Section 11 came into effect. But my question to you is, you keep saying personal comfort doctrine, personal comfort doctrine. This man testified, and he was very honest about it. He wasn't required to play basketball. He wasn't required to stay on the employer's premises for lunch. He could go any place he wanted to. It was a pickup game that he and a bunch of guys decided to engage in. And I'm still stuck on how did it arise out of his employment. The Supreme Court stated in Eagle, in the lunch hour case, the most critical factor in determining whether the accident arose out of and in the course of employment is the location of the occurrence. Thus, where the employee sustained an injury during the lunch break and is still on the employer's premises, the act of procuring lunch has been held to be reasonably incidental to the employment. I'm relying on the Supreme Court. That's the personal comfort doctrine. But I'm now asking you, how does it arise out of his employment? And you're going to tell me because he slipped. You're saying if he left the premises. Pardon? You're saying if he left the premises. No, no, no. I'm asking you, how does this activity arise out of his employment? It arises out of his employment because it's incidental to it. He's there. He's procuring his lunch. He's procuring his refreshing activity. Your argument and your answer is, should be, it arises out of because the employer provided that for them during their lunch hour. Yes. I mean, that would be your position. Yes. Thank you, Judge Holder. Your time is up. Okay. You have time to reply. Thank you. To correct my apologies. Good morning. May it please the court, counsel. My name is Jigar Desai, and I represent the appellant, Intercon Solutions. The primary issue, as the justices are correctly noting, is how this accident arose out of Appelli's employment. And the arbitrator in the commission correctly applied Section 11 to the facts of this case to find that it did not arise out of his employment, that Section 11 applies that petitioner was engaged in a voluntary recreational program or activity. Let's just make this real easy and get to the point. Your opponent says Section 11 doesn't apply because this was not a program like a picnic or a pickup game. Now, what's your answer to that? Well, we addressed this issue in our brief, and I actually looked up the definition of program in Webster's dictionary before my argument today. And Webster's defines programs as, among other things, a plan or system under which action may be taken towards a goal. Now, based on this definition, if the appellant had a system under which action may be taken towards a goal, then this would be sufficient to establish that the appellant had a program, a voluntary recreational program. Our first exhibit submitted into evidence is a liability waiver. And we think this provides evidence that the appellant intended to establish a voluntary recreational program, providing these gymnasium facilities to their employees. And, moreover, the commission, in their majority decision, implicitly made a factual finding that this was a voluntary recreational program as contemplated under Section 11. Otherwise, they wouldn't have applied Section 11 to the facts of this case. And that factual finding shouldn't be overruled unless it's against the manifest way to the evidence. Is it a program because they provided the court? It is a program because they provided this plan or system for employees to engage in a voluntary recreational activity. And what was that plan or system? The basketball facilities, the pool table, workout room, these were things that were provided to the employees as contemplated under Section 11, a voluntary recreational program. Moreover, in Kozak, this isn't a situation where there just happened to be a basketball court and so forth there. They actually said to the employees, here's something you can use, but before you use it, you have to sign this waiver. Correct. And so forth and so on. So it wasn't just that they walked out onto a basketball court that happened to exist there and started playing. The employer provided it for them and told them that it was provided for them. Right. That's why you say this was a program. Right. We think that in this case, the employer made every effort to try to establish this as a voluntary recreational program. Short of actually citing to Section 11 in their liability waiver, indicating that this was a voluntary recreational program, they made every effort to try to establish this. Doesn't the exclusion, though, require that the employee is assigned or directed to participate? That is the statutory exclusion. There are also some judicially interpreted exclusions, and all of those exclusions don't apply here. We think the record is clear. As the justices have noted, that playing basketball was a voluntary recreational activity, played for its own personal benefit. He wasn't assigned or required to participate. The employer did not require or encourage employees to participate. There was no physical fitness requirement involved in the petitioner's position. This isn't somebody who was working as a park district director and needed to participate in park district-related activities, a la Elmhurst. This wasn't a firefighter who had a physical fitness requirement involved in their position or who was obligated to remain on the premises and couldn't leave. All that's well and good, to which your opponent says, aha, you know, I can agree with everything you say, but the personal comfort doctrine trumps that, and why? I bet Eagle Discount and Union Starts would say that. It's still good law. So in part of your argument, could you tell us why the amendment to Section 11 didn't affect Eagle Discount or Union Start? We agree with your line of questioning that Eagle Discount involved an accident that occurred in 1976. The amendment to Section 11 was passed in 1980. We suspect, although I was not able to obtain the transcript from the legislative proceedings, that it was passed in response to the Eagle Discount decision. Moreover, and we note this in our brief, we're not arguing that Section 11 overruled Eagle Discount or the personal comfort doctrine. What we are saying is that Section 11 supersedes the ruling in Eagle Discount and the personal comfort doctrine, so that when there is a voluntary recreational program or activity involved, the personal comfort doctrine does not apply. Is there any legislative history that's helpful to this particular issue here in regards to the amendment to Section 11? I looked into the issue. I was unable to find it, short of going to Springfield and going through the paper documents. But I was unable to find anything by looking at some of the transcripts that are available online of the legislative proceedings. But we think that just based on the plain language of the statutory provisions and Pelley's Exhibit No. 1, that the employer was clearly trying to establish a voluntary recreational program. It was an athletic event. If we look at the definition of event, it's something that happens. I mean, he was involved in a clear recreational activity as contemplated under Section 11, and the record is clear that none of the exceptions, either statutory or judicially interpreted exceptions, should apply in this case. What about this alleged water on the court? Is that a red herring? Does that have anything to do with the analysis, sir? Again, the commission made a factual finding that there was no water on the court, and therefore – But what if there was water on the court? Does that make a difference? We don't think so. We think that Section 11 would still apply to bar the claim. But again, the commission made a factual finding, and there's no evidence in the record to support any claim that that factual finding was against the manifest way of the evidence. So to sum up, the personal comfort doctrine does not apply here why? It does not apply because of Section 11. The employer created a voluntary recreational program. There's no reasonable dispute that he was engaged in a recreational activity. And that was the finding of the commission. That's correct. Thank you. Thank you. Counsel, you may reply. First of all, I would like to address the issue of the waiver. Counsel's argument was that they tried to establish a program by having the employee sign a liability waiver, which was signed at the initial hiring of him. First of all, it's against public policy to try and change the Workers' Compensation Act by some document you're going to have an employee sign. Secondly, he's signing it under duress. If he doesn't sign this, he's not going to get the – Counsel, I think the only reason why your opponent raised it is to establish that it was, in fact, a program, not suggesting that that waived anything under the Workers' Compensation Act. That's not what he said. He said that the signing of the waiver indicated that the having of the basketball court was part of an organized program. He – I think you've got to address the question of whether it was a program or not. No one ever said that the signing of the waiver eliminated rights under the Workers' Compensation Act. The document's called a waiver of liability. We don't care what it's called. He doesn't care what it's called. He just says the signing of it and what's in it indicates that this was an organized program on the part of the employer. Was it a program or wasn't it? And if they could have done the same thing by posting a sign, why do they have the employee sign a document? Counsel, we answer the questions we ask you. Why is it or is it not a program? It's not a program because it's just facilities that are provided. It's not a program. A program is an intramural game, a picnic, a round-robin tennis tournament, a bowling event. So your answer to the question is it is not a program. It doesn't fall under the definition of a program. Exactly. He never argued that the waiver eliminated rights under the Workers' Compensation Act, so you don't have to talk about that. Okay. With regard to legislative history, they haven't been able to provide that. They had plenty of time. They haven't provided anything in the legislative history to support their argument that the Personal Comfort Act doesn't apply. Did you find anything in the legislative history that says it does? No. Thank you, Counsel. Both the arguments in this matter have been taken under advisement and are at a disposition.